### GRAY v. HAWKINS.

(Filed September 22, 1903.)

DEEDS—*Specific Performance—Estates—Remainders—The Code, secs. 1335, 1280.*

Under the provisions of the deed as set out in this case, two of the grantees, after the death of the other grantee, without issue, and the death of the grantor, can make a fee-simple title to the land in controversy.

ACTION by Nathaniel Gray against T. W. Hawkins, heard by Judge *Walter H. Neal* at July Term, 1903, of the Superior Court of MECKLENBURG County.

This is a controversy submitted to the Court without action on a case agreed. The facts material to be considered in determining the controversy are: That on the 14th of August, 1890, William G. Gray, Sr., executed and delivered to the plaintiffs, Nathaniel Gray, W. G. Gray, J. N. B. Gray and John W. Gray, a deed for the real estate described therein, known as the "Moody property," which deed was duly probated and recorded. The consideration upon which

the deed was made was natural love and affection, "and also one pepper corn to the party of the first part." The *habendum* of the deed is in the following words: "To have and to hold the aforegranted premises . . . to the said Nathaniel Gray for and during the term of his natural life, . . . and after his death to the said John W. Gray, W. G. Gray, Jr., and J. N. D. Gray and their heirs and assigns forever, share and share alike; and if either of the last three named should die in the lifetime of the said Nathaniel Gray without leaving issue living at such his death, then his part as then held, owned and enjoyed by him shall go to and vest in the survivor or survivors, as the case may be, and to be held, not subject to the debts of either of the said remaindermen, except as to the surplus of rent as to each share over $500; the object of this deed, in part, being the support and maintenance of the said John, William G. and J. N. B. Gray, pursuant to section 1335 of The Code of North Carolina, and to that end no trustee is now appointed, to the end that upon the death of the said Nathaniel Gray a trustee, to give bond, may be appointed by the Superior Court." At the date of the execution of the said deed all of the said grantees named therein were infants except Nathaniel Gray. John W. Gray, one of the grantees named in the deed, has since died while an infant, intestate, without leaving issue, and all the other grantees are now over twenty-one years of age and living. The grantor, William G. Gray, is now dead. On the 19th of June, 1903, the plaintiffs and the defendant entered into a contract, wherein the plaintiffs contracted to sell and the defendant agreed to buy the lot known as the "Moody property," and the defendant therein agreed to pay to the plaintiffs, upon the delivery of the deed, the consideration agreed upon and set out in said contract. Thereafter the plaintiffs prepared a deed in fee-simple to the defendant, signed by themselves, containing full covenants and

warranties, and after duly executing the same before an officer having authority to take acknowledgment of deeds, tendered said deed to the defendant, but he refused to accept the same or to pay the purchase money agreed upon. The plaintiffs are still ready to tender said deed to the defendant, who refuses to accept the same or to pay the purchase money, for that the deed tendered will not convey to or secure to the defendant an indefeasible title to the land embraced therein. The defendant appealed from a judgment for the plaintiff.

*Hugh W. Harris,* for the plaintiff.
*T. W. Hawkins,* for the defendant.

CONNOR, J., after stating the facts. The sole question presented for determination is whether the deed tendered by the plaintiffs to the defendant will convey to and vest in the defendant an absolute and indefeasible title to the land. His Honor held in the affirmative and rendered judgment accordingly, from which the defendant appealed.

The deed vests in Nathaniel Gray an estate for his life, and in the others a vested remainder in fee, subject to be defeated and vest in the survivor or survivors as to such of them as should die during the life of Nathaniel without issue living at such his death. This is clearly an attempt to limit a fee after a fee-simple, which could not be done at common law. As is said by *Ashe, J.,* in *Smith v. Brisson,* 90 N. C., 284, "There was no way known to the common law by which a vested fee-simple could be put an end to, and another estate put in its place; and the reason is, because no freehold could pass without livery of seizin, which must operate immediately or not at all." After the Statute of Uses, 27 Henry VIII., it was held that a deed operating under the statute could be made to commence *in futuro* without any immediate transmutation of possession, as by bargain and sale, or covenant

to stand seized to uses. From this arose the doctrine of shifting uses and conditional limitations. When created by deed such interests or estates are conditional limitations, and by will they are executory devises.

The interest or estate created by the deed before us is a conditional limitation. Immediately upon the death of John W. Gray the use shifted to the surviving grantees and they became entitled to his interest. If either of the survivors should predecease Nathaniel, without issue, the entire interest or estate would, upon the same principle and by the same process, vest in the survivor. It is immaterial whether this deed operates as a covenant to stand seized, being in consideration of natural love and affection, or as a bargain and sale, as seems to be contemplated by the draftsman by the imaginary passing of the pepper corn as a consideration. Under our statute, by which registration is declared to be in lieu of livery of seizin, the deed would operate as a foeffment. *Hogan v. Strayhorn,* 65 N. C., 279; *Rowland v. Rowland,* 93 N. C., 214. If W. G. Gray, Jr., and J. N. B. Gray should both survive Nathaniel Gray, no question can arise as to the effect of their deed to the defendant; or, if either or both should die during the lifetime of Nathaniel, leaving issue, the contingency upon which the limitation would operate could not arise and their estate in fee-simple defeated. In this contingency no question could arise in respect to their deed. If one should die without issue before the death of Nathaniel, his one-third interest would vest in the survivor; his one-half of one-third, vested in him by reason of the death of John W. Gray, would pass under the deed, upon the principle laid down in *Hilliard v. Kearney,* 45 N. C., 221. In this event the deed of the survivor would pass his vested interest, and his "possibility, coupled with an interest," would, upon the principle announced in *Watson v. Smith,* 110 N. C., 6; 28 Am. St. Rep., 665, pass to his grantee or assignee. The

only other contingency which could arise would be the death of the last survivor, during the life of Nathaniel Gray, without issue. We are of the opinion that his interest would become absolute in fee upon the death of the other grantees. In *Rowland v. Rowland, supra,* an estate was given by deed to John B. and Ophelia Rowland, the *habendum* of the deed being "to have and to hold the same to the said John B. and Ophelia Rowland and their heirs as aforesaid as tenants in common, and upon the death of either one, then to the survivor and his or her heirs forever." *Ashe, J.,* concludes an interesting opinion as follows: "Our opinion is that a defeasible fee in common was given to John B. and Ophelia Rowland, and upon the death of Ophelia the absolute fee vested in John, as survivor, because such was the manifest intention of the donor, and because that construction is not in violation of any principle of law or rule of construction." This deed having been executed since the act of 1879, section 1280 of The Code, the use of the word "heirs" after survivor or survivors is not necessary to create an estate in fee-simple in respect to the accrued interest or shares under the limitation in the deed. The deed provides that the land conveyed shall "be held, not subject to the debts of either of the said remaindermen, except as to the surplus of rents as to each share over $500; the object of this deed, in part, being the support and maintenance of the said John W., William G. and J. N. B. Gray, pursuant to section 1335 of The Code of North Carolina; and to that end no trustee is now appointed, to the end that upon the death of the said Nathaniel Gray a trustee, to give bond, may be appointed by the Superior Court." This we construe to be an attempt to create a spendthrift trust, which may be done by conforming to the provisions of section 1335 of The Code: "It shall and may be lawful for any person, by deed or will, to convey any property to any other person in trust to receive and pay the profits

GRAY *v.* HAWKINS.

annually or oftener for the support and maintenance of any child, grandchild or other relation of the grantor, for the life of such child, grandchild or other relation, with remainder as the grantor shall provide; and the property so conveyed shall not be liable for or subject to be seized or taken in any manner for the debts of such child, grandchild or other relation, whether the same be contracted or incurred before or after the grant: *Provided,* that this section shall apply only to grants and conveyances where the property conveyed does not yield at the time of the conveyance a clear annual income exceeding five hundred dollars."

What restriction upon alienation may be placed upon the grantees or *cesluis que trust* by this section we do not feel called upon to decide, because, in our opinion, the language of the deed does not conform to the provisions of the statute. There is no such declaration of trust in the deed as the statute requires, nor is there any limitation of the estate to the life of a child or grandchild. The provisions of the statute should be at least substantially met and complied with to create the trust with its incidents contemplated by the statute. A mere declaration that it is the object of this deed, in part, to do so, and failing to appoint a trustee, does not create such a trust as the Court would enforce by the appointment of a trustee. We are of the opinion that the plaintiff's title is not affected by the provisions of this section, and their right of alienation is in no manner affected thereby.

Upon a careful consideration of the deed in question, in the light of the facts set forth in the case agreed, we are of the opinion that his Honor was correct in holding that the defendant acquires a fee-simple title to the lot called the "Moody property," and that the plaintiffs are entitled to a specific performance of the contract.

The judgment of the Court below is
Affirmed.