HOKE, J., dissents.
James F. Kornegay at the time of his death was seized in fee of a tract of land in the city of Goldsboro, containing about fifteen acres, of which the land described in the complaint is a portion. Said Kornegay died on 13 August, 1883, having executed his last will and testament appointing his son W. F. Kornegay executor thereof, which was duly proven and the executor therein qualified. The testator left surviving, his children, the said W. F. Kornegay, John J. Kornegay and the plaintiff A. U. Kornegay, and his widow, Fannie E. Kornegay. Item VII of said will is in the following words: "I give to my wife Fannie, during her life and no longer, the dwelling and lot where I now reside, embracing the yard and garden and all buildings adjoining the same on the east side of the stock lane, together with one-half of the lucerne lot on the west side of said lane." By item XI of his will he gave the (660) residue of his estate, together with the land devised to his wife for life, to his son, the said W. F. Kornegay, to hold in trust for his other two sons, to be divided equally between them. He authorized the said trustee to rent out the said real estate or to sell such portion or all of it as in his judgment he might deem best and to invest the proceeds for the benefit of his said two sons. By item XIII he appointed the said W. F. Kornegay guardian to the said Albert U. Kornegay, directing that he manage his portion of the estate and settle with him when he should attain his majority. By item XIV he directed that if either of his said sons, John J. or Albert U., should die without offspring, the *Page 473 
portion of his estate given to the one so dying should pass to the survivor, and if both should die without offspring, the income arising from both their portions should be paid to his wife, Fannie E. Kornegay, during her life or widowhood, and then said property to pass to his son, W. F. Kornegay. That said W. F. Kornegay died on 31 October, 1894, without issue and leaving the said John J. and Albert U. Kornegay his only heirs at law; that by his last will and testament he gave his estate, after the payment of his debts, to his widow, Mrs. Annie L. Kornegay, during her life or widowhood, and upon her death or at her marriage he gave his said estate to his brothers, John J. and Albert U. Kornegay, and Annie D. Slocumb, to be divided equally between them. After the death of the said W. F. Kornegay the said John J. Kornegay died intestate and unmarried, leaving the plaintiff his only heir at law. Thereafter, on 9 January, 1905, the said Annie D. Slocumb executed and delivered to the plaintiff a deed conveying for the consideration of $1 all of her right, title, and interest, present, contingent, and prospective, in and to all the property of every character devised by the last will and testament of the said James F. Kornegay, and all of the right, title, and interest which may have passed or may hereafter pass to her (661) under the last will and testament of W. F. Kornegay. That thereafter the said Annie L. Kornegay intermarried with Charles Dewey. That Fannie E. Kornegay, wife of James F. Kornegay, is now living. Plaintiff A. U. Kornegay arrived at full age on 17 September, 1892, and on 9 January, 1905, contracted in writing to convey to the defendant, for the consideration of $1,200, a portion of the land devised by the said James F. Kornegay as herein before set forth, a description of which is set forth in the complaint; pursuant to the terms of said contract the plaintiff executed and tendered to the defendant a deed in fee with full covenants of warranty for the said land, duly executed by the plaintiff A. U. Kornegay, and by the said Fannie E., widow of the said James F. Kornegay, and demanded payment of the consideration agreed upon, which has been refused. The defendant avers that he is ready, willing, and able to perform his part of the said agreement, if upon the foregoing facts the deed tendered to him conveys an indefeasible title in fee to said land. His Honor being of opinion that the deed tendered conveyed to the defendant a good and indefeasible title to said land, rendered judgment for the plaintiff, to which defendant excepted and appealed.
After stating the facts. The construction of this will was before this Court in Kornegay v. Morris, 122 N.C. 199. The facts, in *Page 474 
the light of which we are now called upon to construe the will and pass upon the plaintiff's title, differ from those set out in that case, in that Fannie E. Kornegay was then made a party defendant, and (662) adopted the answer of the defendant Morris, which alleged that the plaintiff in that case could not convey a clear and indefeasible title, and it was so held. In this case the said Fannie E. Kornegay joins in the execution of the deed. In the opinion filed by Mr. JusticeFurches, after considering the several contingencies provided for in the will, he says: "But if Albert dies without leaving issue, the widow Fannie E. is to have the `income' from the estate left John and Albert, until her death or marriage. This gives her a contingent estate in this property. Her estate is also contingent, depending upon the death of Albert without leaving issue. This contingency may never happen, and she may never receive any benefit from this estate. But if Albert should die without leaving issue, before she dies or marries, she may then enforce the collection of the rents arising therefrom upon or against the lot itself, as this income would be a lien on the property itself." The two questions, therefore, presented for our decision in this case are whether the contingent interest of Fannie E. Kornegay can be assigned or conveyed by her deed and whether Mrs. Annie Slocumb has parted with the contingent interest which she took under the will of W. F. Kornegay. In Watson v. smith, 110 N.C. at p. 6, Shepherd, J., speaking of the effect of a deed conveying a contingent interest, says: "Taking the limitation to be either a contingent remainder or an executory devise, we are of the opinion that the interest of John W. Watson and others was at least a `possibility coupled with an interest,' and its assignment for a valuable consideration and free from fraud or imposition, while void in law, will be upheld in equity," citing Watson v. Dodd, 68 N.C. 528, in which case Pearson, C. J., says that assignments of such contingent interest will be upheld in a court of equity, and that if the estate should afterward vest, the court would compel the assignor to make title, (663) in the absence of fraud or imposition. Gray v. Hawkins, 133 N.C. page 1.
The only doubt which we have had in disposing of the case is in regard to the effect of the deed executed by Mrs. Slocumb to the plaintiff. It would seem that when the will of James F. Kornegay was before the Court inKornegay v. Morris, supra, no notice was taken of the fact that W. F. Kornegay executed a will devising his entire estate to his wife during her life or widowhood, remainder to his two brothers and Mrs. Slocumb. The case is discussed and disposed of upon the theory that the interest of W. F. Kornegay descended to his heirs at law. We find no difficulty in holding that Mrs. Fannie E. Kornegay, by joining with the *Page 475 
plaintiff in the deed tendered the defendant containing appropriate words to release her contingent interest in the income, as well as all title to the land with warranty, parts with her interest, the consideration being the full value of the land. Her deed operates either by way of an assignment, valid and enforcible in equity, or by way of estoppel. Fosterv. Hackett, 112 N.C. 546; Wright v. Brown, 116 N.C. 26.
It is well settled that such contingent interest as W. F. Kornegay took under the will of his father passed under his will. Code, sec. 2140; Fearne on Rem., sec. 752; Underhill on wills, sec. 50; Fortescue v.Satterthwaite, 23 N.C. 566. His widow having married, the interest of her husband passed under his will to the plaintiff, his brother James J. and Mrs. Slocumb. James J. having died without issue, his interest passed to the plaintiff. Hence, if the plaintiff died without issue, the title, subject to a charge to the extent of the income during the life or widowhood of Mrs. Fannie E. Kornegay, will pass to his heirs at law and Mrs. Slocumb. Mrs. Slocumb, therefore, upon the death of the plaintiff without issue, would take under the will of W. F. Kornegay a one-third undivided interest, subject to the rights of Mrs. Fannie E. Kornegay. (664)
It must be conceded that some obscurity rests upon the effect of an assignment of such interest by reason of expressions used by the judges. Such interests have been spoken of as possibilities and classed with bare expectancies, as that of a child to inherit from the parent, etc. Again, the validity of such an assignment has been sustained as an executory contract to convey, passing no present interest or estate, but a mere right in equity, to be enforced by suit when the contingency upon which the estate vests occurs. Such assignments are sometimes sustained upon the doctrine of estoppel, especially when the deed contains a warranty of title. It has also been held that an assignment of such interest, while not passing any present legal title or estate, does pass the equitable title of the assignor, which is perfected by converting the assignor into a trustee for the benefit of the assignee when the estate vests. This Court inFortescue v. Satterthwaite, 23 N.C. 566, by Daniel, J., said: "It is true, as stated in the argument, that a possibility cannot be transferred at law. But by a possibility we mean such an interest or the chance of succession which an heir apparent has in his ancestor's estate. . . . But executory devises are not considered as mere possibilities, but as certaininterests and estates." After citing Gurnell v. Wood, Willes, 211, andJones v. Roe, 3 T. R., 93, in which may be found an interesting review of the cases, the learned judge says: "In the last case the judges seem to have considered it as settled that contingent interests, such as executory devises to persons who were certain, were assignable. They may be *Page 476 
assigned, says Atherly, p. 555, both in real and personal estate, and by any mode of conveyance by which they might be transferred, had they been vested remainders." It is true that the deed in that case was sustained upon other grounds, but the language used shows the opinion held by the learned and eminent judge who wrote for Ruffin, Gaston, and himself.
(665) In Bodenhamer v. Welch, 89 N.C. 78, Ashe, J., discusses the question with his usual clearness and learning, stating the distinction between a "mere possibility" and "a possibility coupled with an interest," which latter, he says, "may of course be sold, assigned, transmitted, or devised; such a possibility occurs in executory devises, contingent remainders, springing or executory uses." He cites a number of authorities to sustain the proposition that such interests or estates may be assigned. In that case it was held that such an interest passed to the assignee in bankruptcy, and when sold by him vested in the purchaser. JudgeAshe notices the language of Pearson, C.J., in Watson v. Dodd 68 N.C. 528, and says: "There can be no doubt, then, that the contingent interest of the bankrupt may be assigned, and whether assignable at law or in equity, whatever interest the bankrupt had vested in his assignee." InWatson v. Dodd, supra, the question before the Court was whether the interest of a contingent remainderman could, before the contingency happened upon which the estate was to vest, be subjected to sale for the payment of debts. That was the only question decided. Pearson, C. J., says,arguendo: "If one entitled to a contingent interest of the kind we are treating of, assigned it and received therefor a valuable consideration, and there was no fraud or imposition, and the estate afterwards vested, a court of equity would compel the assignor to make title or else would hold the estate as a security for the consideration paid, according to circumstances, under its jurisdiction of specific performance of executory contracts." This language is noted by Shepherd, J., in Watson v. Smith,110 N.C. 6. He says: "It is possible he (Pearson, C. J.) had in mind the assignment of a mere possibility, such as the expectancy of an heir at law, as in McDonald v. McDonald, 58 N.C. 211. In Bodenhamer v. Welch,89 N.C. 78, it is held that such an interest may be assigned (we suppose that an equitable assignment is meant), and we are (666) of the same opinion; but even if this were not so, it is clear that the assignment in question, if treated as an executory contract, may be specifically enforced against the assignors and their heirs, should the life tenant die without issue; and this is all that is necessary, according to the stipulations in the case agreed, to entitle the plaintiff to the relief he asks. The plaintiff, the life tenant, has by the assignment acquired an equitable right to the interest of *Page 477 
the remainderman." We have quoted the language of the learned justice for the twofold purpose of showing that the decision is based upon the agreed facts in that case and that by the assignment the plaintiff acquired an equitable right to the interest of the remainderman and not a mere right in equity to file a bill for specific performance. In Watson v. Dodd, supra, it is said that the assignment will be sustained as an executory contract if based upon a "valuable consideration." In Wright v. Brown, supra, it is said the consideration necessary to sustain the assignment must be "sufficient." In other cases the Court uses the term "a fair consideration."
If the deed of Mrs. Slocumb operates only as an executory contract, and all that is acquired is a right to sue for specific performance, we should hesitate to declare that the defendant acquires a "good and indefeasible title" to the land. It is evident that he is paying the plaintiff full value for the lot. If his title in respect to the interest of Mrs. Slocumb is dependent upon the view which a judge or jury may take, at some uncertain time in the future, of the adequacy of the consideration paid her by the plaintiff, when probably, by reason of the growth of the city or the placing of valuable improvements on the property, it has enhanced in value, and the parties to the transaction are dead, we should not compel him to pay his money and take the risk of the result of a lawsuit. Before the defendant is required to complete the purchase and pay the money he should have something more than the mere right to sue for specific performance of an executory contract. The basic principle upon which said assignments are sustained should be (667) settled — certainly so far as the question of consideration is concerned. Of course, if any "fraud or imposition" be practiced upon the remainderman, the deed or assignment would be set aside as in case of and under the same equitable principles as other deeds.
An examination of the authorities and text-books develops an effort of the judicial mind to escape from the uncertainty which has oppressed the subject and bring the law into harmony with the well-recognized principle enlarging the power to assign things in action in the same manner and with the same certainty as things in possession. The general subject underwent an exhaustive examination in Holroyd v. Marshall, 10 H. L. Cas., 209. Mr. Bispham, in his very able work on Equity (6 Ed.), 236, says: "The true ground upon which this and similar decisions are to be placed appears to be, that a court of equity enforces such assignments on the ground that the assignee is entitled to have specific performance of the contract to assign, as soon as the property comes into existence, in the hand of the assignor. But it must not be understood by this remark that the assignor's right is merely in the nature of a right to the *Page 478 
specific performance of executory contracts, or is to be measured by the limitations by which that equitable remedy is controlled. The assignee's right is something more. It is a present title, not existent at law, but thoroughly recognized in equity; and to that title equity stands ready to give full effect the instant the property comes into being. It is true that neither in equity nor at law can a contract to transfer property, not then in existence, operate as an immediate and complete alienation, for the simple reason that there is nothing which can be immediately transferred. But instantly upon the acquisition of the thing, the assignor holds it in trust for the assignee, whose title requires no act on his part to perfect it. The assignee, therefore, has an equitable (668) title from the time of the assignment." The principle thus stated by Mr. Bispham has been and is now uniformly applied to mortgages of after-acquired property. Certainly, it would seem equally applicable when the subject-matter of the assignment is a contingent remainder — the person who is to take being certain. By the statute of wills such interests are made devisable, and by act of Parliament and the Legislatures of several States made the subject of a conveyance at law. Hopkins Real Prop., 305. While there is no statute in this State upon the subject, the Legislature at its session of 1903 provided for the sale of such interests by the courts for the purpose of reinvestment. In the deed executed by Mrs. Slocumb with her husband, the interest which she had and with which she parts is described by reference to the two wills under which she acquired it. She expressly disposes of such interest as she now has or may hereafter have in the property. This form of conveyance prevents the operation of an estoppel. Wellborn v. Finley, 52 N.C. 228. It, however, clearly appears that she understood what her rights were and intended to effectually part with them.
Without bringing into question the decision in Watson v. Dodd, supra, or any of the cases cited, we think that we should, so far as possible, consistently with elementary principles of law, hold that the deed of Mrs. Slocumb operates to vest in the plaintiff the equitable title to all of the interest, title, and estate which she has or may, by the happening of the contingency provided for, have in the locus in quo; that this title is something more than the mere right in equity; that in the event of the plaintiff's death without offspring the title will be perfected without any act on the part of the plaintiff or those claiming under him; that the consideration agreed upon by the parties is sufficient and adequate to pass such equitable title, and sustain it in the event the perfect (669) title shall come to Mrs. Slocumb or her heirs.
We have given the subject a somewhat extended examination because of the uncertainty surrounding it. We feel that in the conclusion which we have reached we are promoting the wise and salutary *Page 479 
policy of the law, which seeks to liberate titles from obscure and uncertain limitations and render alienation easy and simple. There are few greater clogs upon the growth of the industrial life of a people, or the encouragement of home building, than obscurity, uncertainty, and insecurity of titles to land. In respect to transfers or assignments of mere possibilities, especially expectant interests in the estates of parents, we adhere strictly to the principles announced by this Court in McDonald v.McDonald, 58 N.C. 211; Mastin v. Marlow, 65 N.C. 695; Boles v. Caudle,133 N.C. 528; Bispham Eq., 241. Such assignments are not promotive of either the moral, social, or material welfare of the people, and should be anxiously and jealously watched by the courts. It will be an evil day for us when children spend their inheritance before it comes to them, encouraging manifold evils to themselves and to society. The judgment of the court below must be
Affirmed.
HOKE, J., dissenting.
Cited: Cheek v. Walker, 138 N.C. 449; Smith v. Moore, 142 N.C. 279;Beacom v. Amos, 161 N.C. 367; Hobgood v. Hobgood, 169 N.C. 490; Scottv. Henderson, ib., 661; Lee v. Oates, 171 N.C. 725; Bowden v. Lynch,173 N.C. 208; Smith v. Witter, 174 N.C. 618; Williams v. Biggs, 176 N.C. 50;Sharpe v. Brown, 177 N.C. 297; Loftin v. English, 178 N.C. 607;Malloy v. Acheson, 179 N.C. 96,97; Hollowell v. Manly, ib., 264.
(670)